# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| RICARDO SILVA, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | No.  3:24-CV-00080-LS |
| | § | |
| ASSET PROTECTION AND | § | |
| SECURITY SERVICES. L.P., D/B/A | § | |
| GLOBAL PRECISION SYSTEMS, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW IN PART AND DENYING IT IN PART

In this case, a jury found Defendant Asset Protection and Security Services, L.P. ("Asset") liable for retaliation under the Americans with Disabilities Act ("ADA") and awarded Plaintiff Ricardo Silva $193,000.00 for lost wages and benefits.[1] Asset moves for judgment as a matter of law and an order overturning the jury's verdict. In the alternative, Asset moves for a remittitur of the jury's award. For the following reasons, the Court denies Asset's motion to overturn the jury's verdict but grants its motion for a remittitur of damages.

## I.    LEGAL STANDARD.

Judgment as a matter of law is only appropriate if the Court finds "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[2] But "[i]f reasonable persons could differ in their interpretation of the evidence, then the motion should be denied."[3] The Court must "view all evidence and draw all reasonable inferences in the light most

---

[1] ECF No. 87.

[2] Fed. R. Civ. P. 50(a)(1).

[3] *Thomas v. Tex. Dep't. of Crim. Just.*, 220 F.3d 389, 392 (5th Cir. 2000) (citing *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998)).

favorable to the verdict."[4] The Court is "especially deferential" to jury verdicts and will not disturb them "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion."[5]

"There is a strong presumption in favor of affirming a jury award of damages."[6] But this presumption is overcome when an award is "clearly excessive."[7] When the damages are excessive, the Court reduces the verdict "to the maximum amount the jury could properly have awarded."[8] The affected party may either accept the remitted award or demand a new trial on damages alone.[9]

## II.    ANALYSIS.

Asset makes four arguments for relief: (1) that Mr. Silva's claims were not actionable under the ADA; (2) that Mr. Silva did not engage in a protected activity, an element of ADA retaliation; (3) that Asset presented a legitimate, non-retaliatory reason for Mr. Silva's termination; and (4) that the jury's damage award exceeded the highest amount that the evidence could support. Upon review, the Court rejects all arguments save the fourth.

### A.    Actionability.

Asset first argues that the Court should overturn the jury's verdict because Silva's claim lies under the FMLA.[10] Silva argued that Asset retaliated against him for requesting a reasonable accommodation under the ADA—specifically, a period of medical leave.[11] But medical leave,

---

[4] *E.E.O.C. v EmCare, Inc.*, 857 F.3d 678, 682–83 (5th Cir. 2017) (quoting *Bryant. v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005)).
[5] *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citations omitted).
[6] *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995).
[7] *Id.*
[8] *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985) (citing *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983)).
[9] *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001) (citing *Eiland*, 58 F.3d at 183).
[10] ECF No. 91 at 2.
[11] *Id.*

Asset argues, "is by its nature not a reasonable accommodation under the ADA."[12] Instead, it is protected by the FMLA and recovery is only available under that statute.[13]

While "requesting FMLA leave *alone* is not a request for an ADA reasonable accommodation,"[14] that does not mean that a request for medical leave can never be a request for a reasonable accommodation. "[T]aking leave that is limited in duration may be a reasonable accommodation" if it enables an employee to "perform the essential functions of the job upon return."[15] The Court rejects Asset's first argument because requesting medical leave does not "by its nature" preclude relief under the ADA.

### B.    Protected Activity.

Asset's second argument reiterates much of its first. Silva argued that Asset retaliated against him for requesting a reasonable accommodation, which is protected by the ADA. But Asset argues that Silva requested "extended, indefinite medical leave," which is not a reasonable accommodation and therefore not protected by the ADA.[16]

Indefinite leave is not a reasonable accommodation under the ADA,[17] but whether a leave request is indefinite is fact-specific inquiry.[18] Silva presented evidence that he told Asset that he would not be released to work until his next medical evaluation, a date certain.[19] While he did not guarantee he would be released to work on that date, a reasonable jury could still interpret this to

---

[12] *Id.*

[13] *Id.*

[14] *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017) (emphasis added).

[15] *Moss v. Harris Cnty. Constable Precinct One*, 851 F.3d 413, 419 (5th Cir. 2017) (citing *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016)).

[16] ECF No. 91 at 4–6.

[17] *Id.* at 5.

[18] *See Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647–49 (1st Cir. 2000).

[19] *See* Pl.'s Ex. 16.

mean that Silva's leave request was limited to his next evaluation date.[20] The Court therefore rejects Asset's second argument.

### C.    Legitimate, Non-Retaliatory Reason.

Asset's third argument is that the Court should overturn the jury's verdict because it showed a legitimate, non-retaliatory basis for terminating Silva: the terms of its collective bargaining agreement ("CBA") with Silva's union.[21] Asset argues that the CBA "mandates termination of employees on leave for more than 16 weeks in a calendar year" and that, because Silva exceeded this amount, the CBA required Asset to terminate him.[22] Therefore, Asset argues, Silva's termination was not retaliation but merely compliance with the CBA's terms.[23]

The CBA was presented to the jury in this case.[24] Its terms limited an employee's annual leave to 16 weeks but did not affirmatively require Asset to terminate employees who exceeded that limit.[25] While Asset later entered into an agreement with the union to "term [sic] employees after more than sixteen (16) weeks of absence," that agreement also stated that it would not apply if the employee "is on an otherwise approved leave pursuant to the . . . American's [sic] with Disabilities Act."[26] Viewing this evidence in the light most favorable to the verdict, a reasonable jury could conclude that Asset did not have a binding contractual obligation to terminate Silva.[27] The Court rejects Asset's third argument.

---

[20] *See Garcia-Ayala*, 212 F.3d at 648 ("Some employees, by the nature of their disability, are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite. Each case must be scrutinized on its own facts.").

[21] ECF No. 91 at 6–8.

[22] *Id.* at 7.

[23] *Id.*

[24] Def.'s Ex. 6.

[25] *Id.* at 27.

[26] Def.'s Ex. 9 at 1.

[27] *See Toren v. Braniff, Inc.*, 893 F.2d 763, 765 (5th Cir. 1990) (stating that an ambiguous contract's interpretation was a question for the jury).

###### D.    Damages.

The jury awarded Silva $193,000.000 for "[w]ages and benefits from December 7, 2021 to the present."[28] But on the verdict form, it added a note stating that this amount was calculated based on the "difference in wages, plus savings expended."[29] The jury declined to award damages for past or future "pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life."[30]  The jury also determined that Silva had satisfied his duty to mitigate his damages.[31]

Asset makes two arguments that the jury's award must be reduced as a matter of law: First, that Silva had a duty to mitigate and failed to do so, and second, that these damages are insufficiently supported by the evidence.[32] The maximum damage award for lost wages, Asset argues, is $155,965.08, and the jury's reliance on his expended savings was an error of law.[33]

A plaintiff may recover damages for lost wages if he mitigates his damages by conducting a reasonably diligent search for a new position following his termination.[34] These damages are determined by calculating a plaintiff's maximum earning capacity "from the time the discriminatory conduct causes economic injury" to the time damages are "settled," less any interim earnings.[35] When a jury's award for lost wages exceeds the maximum recovery under this calculation, the Court must reduce the award.[36]

At trial, Silva presented evidence that he sought employment at 18 businesses after his termination,[37] so a reasonable jury could find that he fulfilled his duty to mitigate. The Court

---

[28] ECF No. 87 at 7.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 8.

[32] ECF No. 91 at 9.

[33] *Id.* at 10.

[34] *See Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 486 (5th Cir. 2007) (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003)).

[35] *See id.* at 482–83 (citations omitted).

[36] *See Vaughn v. Sabine Cnty.*, 104 F. App'x 980, 985–86 (5th Cir. 2004).

[37] Pl.'s Ex. 26.

therefore does not disturb the jury's award in this regard. But the jury's verdict form makes clear that it improperly included Silva's expended savings in its calculation of lost wages.[38] The Court calculates that Silva's maximum recovery for lost wages was $163,472.63, and any additional recovery is unsupported by the evidence.[39]

Therefore, the Court offers Silva a remittitur of $163,472.63 or a new trial on damages alone.[40] Silva must inform the Court if he intends to accept the reduced award or invoke his right to a new trial by **March 6, 2026**.

## III.    CONCLUSION.

The Court grants Asset's motion for judgment as a matter of law in part and denies it in part [ECF No. 91]. Silva may accept $163,472.63 in damages or a new trial on damages alone and must inform the Court of his decision by **March 6, 2026**.

**SO ORDERED**.

**SIGNED** and **ENTERED** on January 13, 2026.

**LEON SCHYDLOWER**
**UNITED STATES DISTRICT JUDGE**

---

[38] ECF No. 87 at 7.

[39] Silva first suffered financial harm from Asset on December 28, 2021, the day he was cleared to return to work. *See* Pl.'s Ex. 21. The jury "settled" damages on February 14, 2025, 37.5 months later. *See* ECF No. 87. Based on his 2020 W-2, Silva earned an average of $5,356.25 per month in Asset's employment, resulting in a total earning potential of $200,859.38. *See* Pl.'s Ex. 28. Less the $37,386.75 he earned in the interim, *see* Pl.'s Exs. 28, 29, Silva's maximum recovery would be $163,472.63.

[40] *See Higgins v. Smith Int'l, Inc.*, 716 F.2d 278, 281 (5th Cir. 1983) ("[T]he plaintiff must be offered a choice between acceptance of a reduction in damages or a new trial." (citing *Keyes v. Lagua*, 635 F.2d 330, 336 (5th Cir. 1981))).